# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>MARTIN GODBERSEN,<br><br>    Defendant. | No. CR25-4031-LTS-KEM<br><br>**ORDER ON REPORT<br>AND RECOMMENDATION** |

This matter is before me on a Report and Recommendation (R&R) (Doc. 41) in which the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge, recommends that I deny defendant Martin Godbersen's motion (Doc. 33) to suppress evidence. Godbersen has filed objections (Doc. 75). The Government has resisted (Doc. 80) and Godbersen has replied (Doc. 81).

## I. BACKGROUND

A superseding indictment (Doc. 45) charges Godbersen with one count of conspiracy to distribute a controlled substance,[1] two counts of distribution of a controlled substance[2] and one count of possession with intent to distribute a controlled substance and aiding and abetting the possession with intent to distribute a controlled substance.[3] He seeks to exclude evidence gathered from a search of his person and vehicle on April 22, 2025. Doc. 33-1 at 1-2. The Government resists. Doc. 36.

---

[1] In violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846 and 851.

[2] In violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 851.

[3] In violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 851.

Judge Mahoney held an evidentiary hearing on August 11, 2025. Doc. 41 at 1. The Government called Drug Enforcement Agency Task Force Officer John Howard and Iowa State Trooper Samuel Magana Cisneros. *Id.* Judge Mahoney admitted the following exhibits: (1) Magana Cisneros' body camera video (Doc. 33-2, Ex. A); (2) Magana Cisneros' dash camera video (Doc. 33-3, Ex. B); Woodbury County Sheriff's Office Sergeant Michael Simoni's body camera video of a K-9 sniff (Doc. 33-4, Ex. C); Simoni's body camera video of a *Terry*[4] frisk (Doc. 33-5, Ex. D) and an audio recording of an interrogation of Godbersen (Doc. 33-6, Ex. E). *Id.* Judge Mahoney issued the R&R on August 14, 2025. Doc. 41.

## II. THE R&R

### A. *Findings of Fact*

Judge Mahoney made the following findings of fact:[5]

Prior to the day of the traffic stop, the DEA was investigating Godbersen for drug-trafficking activities. A confidential informant identified Paulette Allen as someone with connections to methamphetamine. Through Allen's contacts, the confidential informant purchased methamphetamine from Donald Most on April 1 and April 10, 2025, via controlled buys at Most's residence. During these controlled buys, Allen and Most identified "Marty" as their methamphetamine supplier, and the confidential informant saw Godbersen arrive at Most's residence during the drug transactions.

The confidential informant told the DEA that another purchase would occur at Most's residence on April 22, 2025. DEA agents held a briefing with officers from other agencies, where they relayed what they knew about the prior controlled buys and their belief that Godbersen was the source of methamphetamine. Law enforcement planned to conduct surveillance of Most's house and Godbersen.

---

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

[5] Godbersen has objected to the findings of fact by challenging Judge Mahoney's credibility findings. *See* Doc. 75-1 at 2. As discussed further below, I have reviewed the suppression hearing transcript de novo and I agree with Judge Mahoney's findings. As such, I adopt them without modification.

Through his surveillance, TFO Howard saw Godbersen arrive at Most's residence on April 22 and sit outside in his vehicle for several minutes on his phone. Godbersen ultimately left without making contact with anyone inside the residence. TFO Howard followed Godbersen in his unmarked vehicle. Godbersen drove down Hamilton Boulevard, a street with two lanes for each direction of traffic and lined with several businesses, including a Hy-Vee grocery store and fast-food restaurants. TFO Howard followed Godbersen from the residence and southbound on Hamilton. He followed behind Godbersen and then moved and drove parallel to him. He testified that he kept pace with Godbersen, driving at the same rate of speed, and saw via his own certified speedometer that Godbersen was speeding. TFO Howard also testified that when he drove next to Godbersen, he saw that Godbersen appeared to be texting while driving—he wore "cheaters" reading glasses, holding his phone out in front of him while he moved his thumbs.

During the surveillance, Trooper Magana Cisneros waited in his marked patrol vehicle in the Hy-Vee parking lot at 28th and Hamilton. He testified that Sergeant Simoni communicated via the radio that his radar showed Godbersen driving 41 miles per hour in a 35 mile per hour zone. Shortly thereafter, Trooper Magana Cisneros saw Godbersen drive by his location, and Trooper Magana Cisneros began to follow him. He testified that he heard TFO Howard say on the radio that Godbersen was texting, and Trooper Magana Cisneros could also see in Godbersen's side mirror that Godbersen's head was looking down at his lap. Video from Trooper Magana Cisneros's vehicle shows Godbersen driving close to the left side of the lane, then drift to the right side of the lane before going to the middle of the lane. Ex. B, 0:00-0:25. Trooper Magana Cisneros initiated a traffic stop of Godbersen. Sergeant Simoni and other officers arrived on the scene shortly thereafter.

Trooper Magana Cisneros told Godbersen that he stopped him because he was on his phone. Ex. A, 1:50. He said it looked like Godbersen was texting and pointed out that it took him a while to pull over. *Id.*, 2:15. Trooper Magana Cisneros directed Godbersen out of the car so that he could sit in the patrol vehicle while Trooper Magana Cisneros prepared a warning. *Id.*, 2:30. Trooper Magana Cisneros and Sergeant Simoni conducted a Terry pat down of Godbersen for weapons. *Id.*, 3:10; Ex. D. Trooper Magana Cisneros stated he felt a rocky, crystalline substance in

Godbersen's left pocket, so he placed Godbersen in handcuffs prior to placing him in the front seat of the patrol vehicle. Ex. A, 3:50.

In the patrol vehicle, Tr[o]oper Magana Cisneros and Godbersen continued to discuss whether he had been on his phone while driving. *Id.*, 5:30-6:30. Godbersen denied texting, but Trooper Magana Cisneros said he knew he was texting because somebody watched Godbersen on his phone texting. *Id.* Trooper Magana Cisneros asked Godbersen if they looked at his phone, would it not show recent messages? *Id.* Godbersen said he had been texting twenty minutes ago but not while driving. *Id.* Trooper Magana Cisneros said he was on his phone "like this pretty hard," and mimicked holding a phone out in front of his body. *Id.*

Later, Godbersen asked if he had really been pulled over for texting. *Id.*, 8:12. Trooper Magana Cisneros said he had been pulled over for texting and speeding. *Id.* Godbersen replied that he was cruising the same speed as everyone else. *Id.*, 8:21. Trooper Magana Cisneros said he was driving pretty slowly because he was texting. *Id.* Godbersen asked how he could have been speeding if he was driving slowly. *Id.*, 8:28. Trooper Magana Cisneros said that when he was texting, he drove slowly, but before that, when he first entered Hamilton from Stone Park Boulevard, he had been speeding. *Id.* Trooper Magana Cisneros said he saw Godbersen texting and another officer saw him speeding. *Id.*, 11:34. Trooper Magana Cisneros exited the vehicle and asked Deputy Simoni how fast he had clocked Godbersen driving, and Deputy Simoni said Godbersen was driving 41 in a 35-mile-per-hour zone. *Id.*, 11:45.

Law enforcement ultimately moved Godbersen's car (stopped on the busy street) to a parking lot to conduct a K-9 sniff. The K-9 alerted to the vehicle, and a search of the vehicle and Godbersen's person revealed methamphetamine.

Doc. 41 at 2-5 (noting that the facts were taken from the testimony at the suppression hearing unless stated otherwise).

### B. *The Parties' Arguments*

Godbersen argues the traffic stop was illegal because it was not supported by probable cause or reasonable suspicion that Godbersen was either texting while driving

4

or speeding.  Doc. 75 at 1-2.  He challenges the credibility of officer testimony and asserts that the Government failed to meet its burden to show the stop was constitutional because it failed to prove the traffic violations with evidence other than officer testimony. *Id.* at 2-3.  Additionally, he argues that the stop was improper because it "was a pretextual traffic stop made after a controlled drug transaction did not occur as planned."  *Id.* at 4.

Next, Godbersen argues that the *Terry* frisk was improper because the officers did not have reasonable suspicion that he was armed and dangerous.  *Id.*  He argues that there was not reasonable suspicion that he was armed simply because law enforcement believed he was involved in drug trafficking.  *Id.* at 4-5.  He claims that this was merely a "pretextual frisk," in which Magana Cisneros sought "to determine whether, after the failed drug transaction, [he] possessed drugs."  *Id.* at 5.

The Government argues that the traffic stop was supported by probable cause and reasonable suspicion.  Doc. 36-1 at 6.  The Government claims the stop was proper because Magana Cisneros witnessed Godbersen texting while driving.  *Id.*  Further, the Government argues that Magana Cisneros knew about Godbersen's texting and speeding because other officers told him about these violations, and this knowledge is imputed to Magana Cisneros under the collective knowledge doctrine.  *Id.* at 6-7.

The Government claims that the *Terry* frisk was proper because Magana Cisneros had reasonable suspicion that Godbersen was armed and dangerous.  *Id.* at 9-10.  The Government argues that this suspicion was reasonable because Magana Cisneros believed Godbersen was involved in drug trafficking and "knew that firearms were a common tool of the drug trafficking trade."  *Id.* at 10.

In the alternative, the Government argues that even if the *Terry* frisk was not supported by reasonable suspicion, the evidence from Godbersen's person should not be suppressed because of the inevitable discovery doctrine.  *Id.* at 11.  The Government contends that while Magana Cisneros was issuing a traffic citation warning, "a K-9 search of [Godbersen's] vehicle indicated the presence of controlled substance."  *Id.* at 12.  The Government claims the K-9 indication would have led to the reasonable probability of

5

Case 5:25-cr-04031-LTS-KEM    Document 84    Filed 09/15/25    Page 5 of 13

Godbersen's arrest and a subsequent search incident to arrest. *Id.* at 12-13. As such, the Government asserts that the methamphetamine on Godbersen's person would have inevitably been discovered and should not be suppressed.[6] *Id.*

## C. Recommendations

Judge Mahoney recommends finding "that reasonable suspicion supported the initial stop." Doc. 41 at 7. She also recommends finding that the *Terry* frisk was proper. *Id.* at 8. As such, she recommends denying Godbersen's motion to suppress. *Id.* Because both the initial stop and *Terry* frisk were proper, she did not address the Government's inevitable discovery argument. *Id.*

## III. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

---

[6] Godbersen argues inevitable discovery does not apply because absent the illegal stop and illegal frisk there would not have been a "basis to extend the stop for minor traffic violations to conduct a K-9 sniff." *See* Doc. 33-1 at 12 (citing *Rodriguez v. United States*, 575 U.S. 348, 354-57 (2015)).

6

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## IV. DISCUSSION

### A. *Godbersen's Objections*

Godbersen objects to the following conclusions: (1) reasonable suspicion or probable cause supported the traffic stop and (2) reasonable suspicion that he was armed and dangerous supported the *Terry* frisk solely because officers suspected he was involved in drug trafficking. Doc. 75 at 2-5.

### B. *Analysis*

#### 1. *Traffic Stop*

Godbersen argues that neither reasonable suspicion nor probable cause supported the traffic stop because (1) Magana Cisneros was not credible, (2) the Government did

not corroborate his testimony with additional evidence and (3) the stop was pretextual. I will discuss each in turn.

### a. *Credibility Determination*

Godbersen objects to and challenges Judge Mahoney's determination that Magana Cisneros' testimony was credible. Doc. 41 at 6. Godbersen notes Magana Cisneros "made inconsistent statements to Godbersen during the traffic stop" (*id*. at 6) and the Government did not offer corroborating evidence. *See* Doc. 75 at 2-3; Doc. 52 at 46 (admitting that although Judge Mahoney could determine the stop was lawful based on testimony alone, not offering corroborating evidence went toward "a credibility determination"). To support his challenge, Godbersen directs me to *United States v. Moua*, 145, F.4th 929 (8th Cir. 2025), which he believes illustrates that "challenging Chief Judge Mahoney's credibility findings . . . is not an insurmountable hill." Doc. 75-1 at 2.[7]

I have read the evidentiary hearing transcript in its entirety. *See United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) ("[D]e novo review requires that the district court either listen to the tape of the hearing or read the hearing transcript."). Upon review, I agree with Judge Mahoney that "Magana Cisneros explained both during the traffic stop and at the hearing that law enforcement clocked Godbersen speeding when he first turned onto Hamilton Road, then as he drove south down Hamilton, his speed slowed and officers observed him on his phone." Doc. 41 at 6-7. I find that this overall coherence outweighs minor inconsistencies in what Magana Cisneros told Godbersen during the stop. *Id*. I further agree that "Magana Cisneros'[] actions during the traffic stop are consistent with not wanting to let the target of a drug investigation know he was under surveillance or that a confidential informant was working with law enforcement."

---

[7] As Judge Mahoney made credibility determinations only as to Magana Cisneros' testimony (Doc. 41 at 6-8), it appears that Godbersen's objection is limited to Magana Cisneros.

8

*Id.* at 7. Godbersen's objections based on the credibility of Magana Cisneros are overruled.

### b. Lack of Corroborating Evidence

Godbersen argues neither reasonable suspicion nor probable cause supported the stop because there was a lack of corroborating evidence in three respects. First, the Government did not have Sergeant Simoni testify. Doc. 75 at 3. Godbersen found Simoni's absence "conspicuous" because he was the officer who allegedly confirmed via radar that Godbersen was speeding (*id.*) before radioing this to other officers. Doc. 41 at 3. Second, the Government did not corroborate officer testimony that Godbersen was speeding with other evidence, such as dashboard camera video that Godbersen alleges would have been present in Simoni's marked patrol car. Doc. 75 at 3. Third, the Government did not corroborate officer testimony that Godbersen was texting and driving with his phone records or video evidence. *Id.* Essentially, Godbersen argues that the evidence is insufficient because the Government could have presented stronger evidence.

Magana Cisneros was not the only officer to testify. Howard testified that he saw Godbersen texting while driving. Doc. 52 at 11. Howard was driving an unmarked car with a certified speedometer and testified that Godbersen was speeding when Howard drove behind or alongside him. *Id.* A court may find probable cause based solely on officer testimony without extrinsic proof. *See United States v. Mendoza*, 677 F.3d 822, 827-28 (8th Cir. 2012); *see also United States v. Herbst*, No. 17-CR-4059, 2018 WL 445532, at *11 (N.D. Iowa Jan. 16, 2018) ("There is no requirement of extrinsic proof that a traffic violation occurred, rather, one officer's credible testimony may be sufficient to establish probable cause.").

Of course, officer testimony cannot be accepted if it is controverted by extrinsic evidence. *See Mendoza*, 677 F.3d at 827. Godbersen has not identified any such extrinsic evidence. While Magana Cisneros' body camera (Ex. A) does not show anything above his car's dashboard and his dashboard camera (Ex. B) does not show

9

inside Godbersen's car, the footage does not refute Magana Cisneros' testimony Godbersen was texting and driving. Instead, as Godbersen conceded during the evidentiary hearing, what is left is a credibility determination. *See* Doc. 52 at 46.

As noted above, I find Magana Cisneros' testimony to be credible. This testimony is not controverted by extrinsic evidence and is corroborated by Howard's testimony. Godbersen's objections based on a lack of corroborating evidence are overruled.

### c. *Pretextual Stop*

Godbersen claims Judge Mahoney "placed insufficient weight on the officers' motivation [for] the traffic stop" and argues it was a pretextual stop after a failed controlled drug transaction. Doc. 75 at 4. However, as Judge Mahoney correctly noted: "The Fourth Amendment does not prohibit pretextual stops." Doc. 41 at 5-6. Instead, "if an officer has reasonable suspicion or probable cause to stop for a traffic violation, 'any ulterior motivation on the officer's part is irrelevant.'" *United States v. McLemore*, 887 F.3d 861, 864 (8th Cir. 2018) (quoting *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016)). Godbersen's objections based on an alleged pretextual nature of the stop are overruled.

### 2. *Terry Frisk*

Godbersen objects to Judge Mahoney's determination that Magana Cisneros' *Terry* frisk was proper. Doc. 75 at 4. He challenges her determination that Magana Cisneros' belief that he was involved in drug trafficking was sufficient to reasonably suspect that he was armed and dangerous. *Id.* at 5.

"During a valid stop, officers may conduct a protective pat-down search for weapons to ensure officer safety if they have objectively reasonable suspicion that a person might be armed and dangerous." *United States v. Austin*, 104 F.4th 695, 699 (8th Cir. 2024). Judge Mahoney determined that "Eighth Circuit caselaw is clear that a reasonable suspicion a suspect is involved in drug trafficking provides a reasonable

suspicion the suspect may be armed and dangerous for purposes of conducting a *Terry* frisk." Doc. 41 at 7-8. Godbersen challenges this determination and her review of caselaw.

Judge Mahoney correctly summarized Eighth Circuit caselaw. "It is reasonable for an officer to believe that an individual may be armed and dangerous when that individual is suspected of being involved in a drug transaction because 'weapons and violence are frequently associated with drug transactions.'" *United States v. Robinson*, 119 F.3d 663, 667 (8th Cir. 1997) (quoting *United States v. Brown*, 913 F.2d 570, 572 (8th Cir. 1990); *accord United States v. Bustos-Torres*, 396 F.3d 935, 943 (8th Cir. 2005) ("Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction."); *United States v. Gaffney*, 789 F.3d 866, 870 (8th Cir. 2015) (same); *United States v. Crippen*, 627 F.3d 1056, 1063 (8th Cir. 2010) (same).

Godbersen suggests that only *dicta* supports *Terry* frisks based on drug trafficking "on its own." Doc. 75 at 7. He correctly notes that many cases involve additional factors rather than relying on "alleged drug trafficking as the sole basis for a frisk." *Id.* (emphasis omitted). However, in *United States v. Brown*, 913 F.2d 570 (8th Cir. 1990), the Eighth Circuit determined that a *Terry* stop was reasonable solely based on alleged drug trafficking. *Id.* at 572 ("In the present case, the officers made an investigatory stop because they had an articulable reasonable suspicion that the occupants of the Ford Tempo were dealing drugs. Since weapons and violence are frequently associated with drug transactions, the officers reasonably believed that the individuals with whom they were dealing were armed and dangerous.")

Godbersen acknowledges *Brown* and admits the case "does not discuss other factors beyond alleged drug dealing in affirming the denial of a motion to suppress based on a frisk." Doc. 75 at 9 n.4. He challenges *Brown* because it relied on *United States v. Oates*, 650 F. 2d 45, 62 (1977), which dealt with "substantial dealers in narcotics."

11

Doc. 75 at 9 n.4. Ultimately, however, *Brown* serves as Eighth Circuit precedent determining that alleged drug dealing alone can justify a *Terry* frisk.

*Robinson* further supports this position. In that case, after determining that "[i]t is reasonable for an officer to believe that an individual may be armed and dangerous when that individual is suspected of being involved in a drug transaction," the court continued:

> The officer who conducted the pat-down search in the present case had a reasonable suspicion that appellant had just purchased drugs and that he might be armed and dangerous. *He was justified, therefore, in conducting a pat-down search of appellant in order to protect himself from possible violence.* Further justification for the reasonableness of the officer's suspicion was the fact that appellant had taken his hands off the steering wheel and moved them towards his waist, the fact that he appeared nervous and the fact that he would not make eye contact.

119 F.3d at 667 (emphasis added).[8]

In further support for his contention that suspicion of drug trafficking, alone, does not justify a *Terry* frisk, Godbersen quotes an Illinois appellate court decision. Doc. 75 at 9-10). In *People v. Rivera*, 650 N.E.2d 1084 (Ill. App. Ct. 1995), the court stated: "The mere fact that an officer believes drug dealers carry weapons or narcotic arrests involve weapons is insufficient alone to support reasonable suspicion to justify a *Terry* frisk." *Id*. at 1090. As noted above, however, Eighth Circuit caselaw points to the opposite result.

Based on my de novo review of the record, I agree with Judge Mahoney that "law enforcement had reasonable suspicion that Godbersen was involved in drug trafficking." Doc. 41 at 7. I further find that Magana Cisneros had reasonable suspicion that Godbersen might be armed and dangerous. During the evidentiary hearing, Magana

---

[8] The emphasized sentence represents a direct statement by the Eighth Circuit that a reasonable suspicion of drug trafficking, alone, justified the *Terry* frisk. In his brief, Godbersen quotes the next sentence without including the emphasized sentence. Doc. 75 at 8.

Cisneros testified to his specific concerns about weapons when he conducted the traffic stop. Doc. 52 at 34. He stated that based on "the two previous controlled buys, I kn[ew] that we were dealing with somebody who is a known drug dealer. My concern was my safety primarily at that point." *Id.* at 34-35. He further testified that he typically frisks suspects "involved in the drug trade" because his training and experience have led him to associate drug trafficking and firearms. *Id.* at 29, 38. Reasonable suspicion of drug trafficking supported Magana Cisneros' reasonable suspicion that Godbersen was armed and dangerous. Godbersen's objections to the *Terry* frisk are overruled.[9]

## V. CONCLUSION

For the reasons set forth herein:

1. Defendant Martin Godbersen's objections (Doc. 75) are **overruled** and I **accept** the Report and Recommendation (Doc. 41) without modification.

2. Godbersen's motion (Doc. 33) to suppress evidence is **denied**.

**IT IS SO ORDERED** this 15th day of September, 2025.

_____
Leonard T. Strand
United States District Judge

---

[9] Because both the traffic stop and the *Terry* frisk were permissible, I will not address the Government's inevitable discovery argument.